UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICK HAZELTINE,

         Petitioner,

    v.

JANINE WALLACE, Warden,

         Respondent.

No.  1:25-cv-00698-KES-SKO (HC)

**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**

**[21-DAY OBJECTION DEADLINE]**

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  As discussed below, the Court finds the petition to be without merit and recommends it be **DENIED.**

## I.    FACTUAL BACKGROUND[1]

On February 9, 1994, appellant Rick Hazeltine sexually assaulted his live-in girlfriend's three children, whose ages ranged from eight months to four years. Hazeltine was sentenced to 11 years in state prison. This was his third conviction involving the sexual abuse of minors. His first conviction at age 16 was based on his molestation of a six-year-old niece when he was 13 years

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).  Therefore, the Court will rely on the Fifth DCA's summary of the facts in People v. Hazeltine, Case No. F053109 (Cal. Ct. App. 2008). (Doc. 17-1 at 1-3.) See Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

old. His second conviction was at age 17, when he was convicted of molesting a 13-year-old girl. In addition to these convictions, Hazeltine had suffered a number of other offenses, including forgery, vehicle theft, petty theft, and contributing to the delinquency of a minor.

In 1999, prior to Hazeltine's release from prison, the Tuolumne County District Attorney filed a petition seeking to commit Hazeltine to the Department of Mental Health (department) as a sexually violent predator (SVP) under the Sexually Violent Predator Act (SVPA) (Welf. & Inst.Code, § 6600 et. seq.). The petition was granted and Hazeltine was committed for a two-year term. Recommitment petitions were filed and granted in 2001 and 2003.

On August 11, 2005, the district attorney again filed a petition seeking an extension of the SVP commitment. The trial was held on June 13, 2007. Hazeltine waived personal appearance at trial and did not appear.

At trial, Dr. Kathleen Longwell and Dr. Robert Owen testified as experts. Dr. Longwell, a clinical psychologist, testified that she had conducted the initial SVP evaluation of Hazeltine. She performed recommitment evaluations in 2005 and 2006. In 1999, Hazeltine admitted to molesting his niece, but denied molesting the 13-year-old, stating that the sexual contact was consensual. [How can he admit to molesting her and deny that she was molested?] He denied any sexual contact with the children of his live-in girlfriend. While confined, Hazeltine has refused to participate in any sexual-offender or substance-abuse treatment. He is "hostile toward the whole notion of treatment." He contends that the treatment program offered is a "bad program, it doesn't help and he is never going to do it." Dr. Longwell opined that Hazeltine's 1994 conviction met the first criteria for SVP determination. She also opined that his diagnosed mental health disorder of paraphilia not otherwise specified, alcohol dependence, and antisocial personality disorder met the second criteria for SVP determination. Dr. Longwell testified that Hazeltine met the third criteria for SVP determination because, in her opinion, he was likely to engage in sexually violent predatory criminal behavior in the future.

Dr. Owen, also a clinical psychologist, evaluated Hazeltine in 2002, 2005, and 2006, although Hazeltine refused to be interviewed by Owen for any of the three evaluations. Dr. Owen diagnosed Hazeltine as a pedophile with alcohol dependence disorder and antisocial personality

disorder. According to Dr. Owen, all three diagnoses lead to Hazeltine's inability to control his behavior. Dr. Owen testified that Hazeltine presented every factor suggesting a likelihood of reoffending in the future, including a deviant sexual preference for children; prior sexual offenses; early onset of sexual offending; poor probation and parole performance; unemployment; antisocial personality; separation of parents; failure to participate in treatment; and no protective factors like being in the community for five years without reoffending or serious health problems to preclude reoffending. Dr. Owen concluded Hazeltine was likely to reoffend in a predatory way.

After hearing the evidence, the jury found that Hazeltine met the criteria for commitment as an SVP. On June 14, 2007, the court ordered Hazeltine committed as an SVP for an indefinite term pursuant to section 6604.

## II.     PROCEDURAL BACKGROUND

Petitioner appealed to the California Court of Appeals, Fifth Appellate District (hereinafter "5th DCA").  On June 2, 2008, the Fifth DCA affirmed the judgment. (Doc. 17-1.) The California Supreme Court denied review on August 13, 2008. (Doc. 17-3.)

Thereafter, Petitioner filed five pro se habeas petitions in the state courts as follows:

Petition for Writ of Habeas Corpus - Tuolumne County Superior Court
Filed: November 16, 2023;
Resolution: January 12, 2024: Denied without prejudice to re-filing a petition that complies with Cal. Welfare and Inst. Code § 6604.9.

Petition for Writ of Habeas Corpus - California Court of Appeal
Filed: February 2, 2024;
Resolution: August 8, 2024: Denied without prejudice to exhausting remedies in trial court.

Petition for Writ of Habeas Corpus – Cal. Supreme Court
Filed: August 26, 2024;
Resolution: January 15, 2025: Summarily denied.

Petition for Writ of Habeas Corpus – Cal. Supreme Court
Filed: October 25, 2024;
Resolution: January 15, 2025: Petition denied with citation to In re Robbins, 18 Cal.4th 770, 780 (1998) and In re Clark, 5 Cal.4th 750, 767-69;

Petition for Writ of Habeas Corpus – Cal. Supreme Court
Filed: January 7, 2025;
Resolution: May 14, 2025: Petition denied with citations to People v. Duvall, 9 Cal.4th 464, 474 (1995) and In re Swain, 34 Cal. 2d 300, 304 (1949).

(Docs. 17-4 to 17-13.)

3

Petitioner also filed numerous motions with counsel and while pro se in the Tuolumne County Superior Court from 2020 through 2025. (Docs. 17-14 to 17-38; 24-1 to 24-2.)

### III.    STANDARD OF REVIEW

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

Under Section 2254(d)(1), a state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).  This court looks to "Supreme Court holdings at the time of the state court's last reasoned decision" as "the source of clearly established Federal law for the purposes of AEDPA." Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). A Supreme Court precedent is not clearly established law under section 2254(d)(1) unless the Court "squarely addresses the issue" in the case before the state court. Wright v. Van Patten, 552 U.S. 120, 125–26 (2008) (per curiam) (concluding that a state court had not unreasonably applied federal law to a claim of prejudice under Strickland where the logic of petitioner's argument would have required the extension of the Supreme Court's inherent prejudice doctrine to a new context); Carey v. Musladin, 549 U.S. 70, 76–77 (2006) (same). While "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt," Yarborough v. Alvarado, 541 U.S. 652, 666 (2004), "when a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." Murdoch v. Castro, 609 F.3d 983, 991 (9th Cir. 2010). "'[I]f a habeas court must extend a rationale before it can apply to the facts at

4

hand,' then by definition the rationale was not 'clearly established at the time of the state court decision.'" White v. Woodall, 572 U.S. 415, 426 (2014) (quoting Yarborough, 541 U.S. at 666).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). The petitioner "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" Shinn v. Kayer, 592 U.S. 111, 118 (2020) (quoting Virginia v. LeBlanc, 582 U. S. 91, 93 (2017) (*per curiam*)). Rather, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility of fairminded disagreement*." Richter, 562 U.S. at 103 (emphasis added); see also Kayer, 592 U.S. at 118. In other words, so long as fairminded jurists could disagree with each other as to whether the state court was correct, the state court decision is not unreasonable under AEDPA. Congress "meant" this standard to be "difficult to meet." Richter, 562 U.S. at 102.

Section 2254(d)(2) pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). The federal habeas court must give "substantial deference" to the state court. Brumfield v. Cain, 576 U.S. 305, 314 (2015). "Factual determinations by state courts are presumed correct" and the petitioner bears the burden of overcoming the presumption with "clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340; 28 U.S.C. § 2254(e)(1). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries,

114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004). If "'[r]easonable minds reviewing the record might disagree' about the finding in question, '. . . that does not suffice'" to prove the lower court's factual determination was unreasonable. Wood v. Allen, 558 U.S. 290, 301 (2010) (alteration in original) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Andrews v. Davis, 994 F.3d 1042, 1107 (9th Cir. 2019) (en banc). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

**IV.    REVIEW OF CLAIMS**

Petitioner presents the following grounds for relief: 1) his lawyer rendered ineffective assistance by failing to follow-up on her demand for Petitioner's release following removal of his pedophillic disorder diagnosis; 2) the SVPA process is a "sham" in that Petitioner cannot obtain discovery, he has had no lawyer for most of his commitment, and the state adds new evidence that he cannot challenge; 3) he has completed a 10-module treatment program and has had his pedophillic disorder diagnosis removed, yet the state and courts keep Petitioner committed; 4) the state's argument that he acted with full intent as to his crime of conviction is contradicted by their new position that he acted without intent and because of a mental disorder; 5) the state has used annual evaluations with new, untested claims against him but failed to allow him a chance to confront or challenge them; 6) his 1981-1982 juvenile plea is invalid because he wasn't told it could be used later to label him a sexually violent predator; and 7) the cumulative effect of the errors violates Petitioner's due process rights.

6

A.      Removal of Diagnosis and Ten-Module Treatment Plan[2]

In Claim Three, Petitioner contends he is wrongly in civil commitment, because the two mental disorder diagnoses for which he had been civilly committed had been removed. Petitioner's contention does not merit federal habeas relief.

Petitioner points to a 2020 "Diagnosis Change/Update Form" signed by two reviewing psychologists and one psychiatrist. (Doc. 9 at 106-107.) In this form, the reviewing mental health professionals changed Petitioner's current DSM-5 diagnosis by removing "pedophilic disorder, non-exclusive type, sexually attracted to both," and "major depressive disorder, single episode, unspecified." (Id.) At first glance, the removal of the pedophilic disorder may appear to lend weight to Petitioner's argument. However, the reviewing professionals left unchanged Petitioner's diagnoses for "alcohol use disorder, severe, in remission, in a controlled environment" and "antisocial personality disorder." (Id. at 107.)  Under California law, there would still be probable cause for his commitment based on the anti-social personality disorder diagnosis.

In Hubbart v. Superior Court, 19 Cal. 4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584 (Cal. 1999), the California Supreme Court rejected the appellant's request to strike down the SVPA because it does not expressly exclude antisocial personality disorders or other conditions characterized by an inability to control violent behavior, such as paraphilia, from being categorized as a "diagnosable mental disorder." In so ruling, the court necessarily found that these conditions can be mental disorders under the SVPA if coupled with a finding of current dangerousness. Likewise, in an unpublished opinion, the California Court of Appeals rejected the contention that an antisocial personality disorder diagnosis cannot provide the basis of an SVPA commitment. People v. Swain, 2010 WL 717687, at *3 (Cal. Ct. App. Mar. 3, 2010). In Swain, the court held, "We have found no authority to support Swain's position that an antisocial personality disorder alone cannot form the basis of an SVP commitment where, like here, the jury makes the required finding that the disorder makes him a danger to the public because, as a result

_____

[2] The Court will address Petitioner's claims out of the order Petitioner presented them because the resolution of subsequent claims relies on the discussion of the facts resolving the instant claim.

7

of the disorder, it is likely that he will engage in sexually violent predatory conduct." Id. In rejecting that anti-social personality disorder cannot, standing alone, be a "qualifying mental disorder" for purposes of the SVPA, the Court held, "An instruction that antisocial personality disorder is never a qualifying mental disorder under the statutory definition is an incorrect statement of the law and would properly have been refused if requested." Id. at *3. See also Rainwater v. King, 2017 WL 6040425, at *9, n. 2 (E.D. Cal. Dec. 6, 2017); Leonard v. King, 2014 WL 7239453, at *8, n. 6 (E.D. Cal. Dec. 17, 2014).

Thus, under California law, Petitioner still has a qualifying mental health diagnosis for commitment under the SVPA.  A federal court is bound by the state's interpretation of state law. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam).  It is also well-settled that federal habeas relief does not lie for errors of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings). It is not for this Court to question what qualifies under California law as a mental health disorder for SVPA purposes. Habeas relief is thus unavailable.

Petitioner cites to Foucha v. Louisiana, 504 U.S. 71 (1992), for his contention that he must be released because the mental disorder that placed him under involuntary commitment has been removed.  In Foucha, the issue was not simply that the originally diagnosed condition had resolved; the doctors were unwilling to opine Foucha had any mental illness (Id. at 74-75), and the court held commitment could not continue solely on the basis of dangerousness for which there was no evidence of anyway (Id. at 80-83). Foucha does not hold that resolution of certain symptoms or a change from the diagnosis that originally supported commitment precludes continuing commitment. The Court held that the evidence indicated Mr. Foucha had no remaining mental illness.

Here, Petitioner has been continually diagnosed with antisocial personality disorder, which qualifies as a mental disorder under the SVP Act. Therefore, the holdings in Foucha are inapplicable. If, like Foucha, the evidence were to indicate that Petitioner has no remaining mental illness, then release would be required absent civil commitment proceedings. But that is

8

not case here, where no doctor has opined that there are no further mental defects or disorders remaining.

Likewise, Petitioner's claim that he has completed a 10-Module Treatment Program to treat his mental disorder, while laudable, does not merit habeas relief. Whether the treatment program qualifies under California law, and how it impacts his mental health diagnosis, are questions entirely dependent on application and interpretation of California law.

B.    Ineffective Assistance of Counsel

In a related claim, Petitioner alleges his appointed counsel rendered ineffective assistance in violation of his constitutional rights. He claims counsel failed to follow-up with the state hospital authorities after counsel notified them that his former diagnoses for pedophilic disorder had been removed. Had counsel done so, Petitioner alleges he would have been released since he no longer qualified as a sexually violent predator.

1.   Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75 (1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things.  First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms.  Strickland, 466 U.S. at 687-88.  Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed at trial. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable.

Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

2.  Analysis

As an initial matter, the Court notes that Respondent correctly argues there is no constitutional right to counsel in collateral proceedings with respect to civil commitment.

"In all criminal prosecutions, the accused shall enjoy the right...to have the assistance of counsel for his defense." U.S. Const. amend. VI. However, while civil commitment proceedings "constitute[ ] a significant deprivation of liberty that requires due process protection," Addington v. Texas, 441 U.S. 418, 425 (1979), the "fact that a proceeding will result in loss of liberty does not ipso facto mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment," Middendorf v. Henry, 425 U.S. 25, 37 (1976). The Supreme Court has not addressed whether there is a constitutional right to counsel in civil commitment proceedings. Cf. Turner v. Rogers, 564 U.S. 431, 441 (2011) ("[T]he Sixth Amendment does not govern civil cases."); Austin v. United States, 509 U.S. 602, 608 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"); Carty v. Nelson, 426 F.3d 1064, 1073 (9th Cir. 2005) (finding "the Sixth Amendment right to confrontation does not attach

10

in civil commitment proceedings"); <u>Young v. King County</u>, 70 F. App'x 939, 940 (9th Cir. 2003) (unpublished) (holding that person civilly committed under Washington's SVP act did not have right to effective assistance of counsel).

"[W]hen a Supreme Court case "does not 'squarely address[ ] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court ... it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision." <u>Moses</u>, 555 F.3d at 754 (second, third, and fourth alterations in original) (quoting <u>Wright</u>, 552 U.S. at 125). Therefore, the state court's denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on this ground.

Petitioner's claim must also be rejected because he cannot demonstrate that counsel's alleged error was prejudicial. As discussed in the first claim, the removal of pedophilic disorder did not remove all bases for Petitioner's SVPA commitment. Under California law, Petitioner's diagnosis of antisocial personality disorder provided a valid basis for SVPA commitment. Thus, even if counsel had followed up with state mental health authorities, there is not a reasonable probability the result would have been different. Authorities may have rejected counsel's suggestion but failed to respond to counsel's letter.  If counsel's letter was simply overlooked, any follow-up would have likely been rejected. Moreover, the federal standard of review is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.  <u>Yarborough v. Gentry</u>, 540 U.S. at 5. Again, Petitioner fails to show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

11

C.      SVPA Procedures

In his next claim, Petitioner claims California's SVPA release mechanisms are a "sham." He argues that: 1) he cannot obtain records such as his annual SVP evaluations; 2) he has been without a lawyer for most of his commitment; and 3) he has no way of challenging his annual evaluations. The claims are without merit.

Petitioner's complaint that he cannot obtain records such as annual SVP evaluations is belied by the record. See May 3, 2024, Annual Evaluation (Doc. 9 at 58-87.) In his traverse, Petitioner complains that the annual evaluation is "so heavily redacted with opaque black bars as to be utterly illegible, precluding any meaningful review or challenge." (Doc. 21 at 4.) The Court has reviewed the document in question. While there are redactions, they are primarily within Petitioner's "Sexual Offense History" section (Doc. 9 at 60-64), and the redactions are mostly to victim identities. Moreover, these facts are known to Petitioner. Some redactions are also made to victim-identifying facts within Petitioner's "Relevant Psychosocial History" section (Doc. 9 at 64-68), but again, these facts are known to Petitioner and are not material to the determination. The relevant sections of the annual evaluation for Petitioner's purposes, such as "Treatment Progress" (Doc. 9 at 68-73), "Diagnosed Mental Disorder" (Doc. 9 at 73-76), "Risk Assessment" (Doc. 9 at 77-82), "Opinion Regarding Unconditional Discharge" (Doc. 9 at 82-83), and "Conclusion" (Doc. 9 at 84), are almost entirely intact with few exceptions for identifying information and depictions of sexual acts. As before, these redacted facts are known to Petitioner and immaterial to the evaluation. Thus, the Court rejects the argument that the annual evaluation is "utterly illegible precluding meaningful review or challenge."

With respect to Petitioner's claimed lack of counsel, as discussed *supra*, the Supreme Court has not found a constitutional right to counsel in civil commitment proceedings. See Turner v. Rogers, 564 U.S. at 441. Therefore, Petitioner cannot demonstrate a violation of his constitutional rights to warrant habeas relief.  Moses, 555 F.3d at 754. Moreover, as pointed out by Respondent, Petitioner was without counsel for much of the time because of his repeated requests to be pro per. (Doc. 17-16; 17-35; 17-38; 24-2.) He cannot now claim he was denied counsel when it was he who chose to be pro per. See Faretta v. California, 422 U.S. 806, 834, n.

46 (1975) ("... a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'").

Lastly, Petitioner argues he has no way of challenging his annual evaluations. This is incorrect. Petitioner must follow the pertinent procedures set forth in Cal. Welf. & Inst. Code §§ 6604.9, 6605, 6608 to challenge his commitment, as noted by the state courts. (Doc. 17-5, 17-7.)

In any event, habeas relief is unavailable for Petitioner's contention that the State of California has failed to follow the commitment procedures set forth in the SVPA in violation of his federal due process rights. Alleged errors in the application of state law are not cognizable in federal habeas corpus. See Hubbart v. Knapp, 379 F.3d 773, 779–80 (9th Cir. 2004); see also Langford v. Day, 110 F.3d 1380, 1389 (9th Cir.1996) (holding that a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process"); Johnson v. Hunter, 291 F. App'x 836, 837 (9th Cir. 2008) (alleged failure by state in following commitment procedures does not present a federal question).

D.   Contradictory Positions by the State

Petitioner next argues that his SVPA proceedings violated the doctrine of judicial estoppel because the state took two different and opposite positions on the same issues and deprived Petitioner of his federal and state constitutional rights.  Petitioner contends that in 1993, the prosecution argued he acted with full intent and volition when he violated Cal. Penal Code § 288(a), and never mentioned a mental disorder. However, after he had served his time, the government then claimed his 1993 conviction proved he had a mental disorder that impairs his control.

Again, habeas corpus is unavailable for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1981); see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir.1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir.1986). The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Estelle v. McGuire, 502 U.S. at 68. After review of the record, this court finds there was no conflict requiring application of estoppel principles. Whether or not petitioner was found guilty of

13

a general or specific intent crime bears no relevance to the later determination that he was presently volitionally impaired and posed a danger, if released.

Moreover, the claim is untimely. Petitioner was committed as an SVPA on June 14, 2007. Petitioner's petition for review in the California Supreme Court was denied on August 13, 2008. (Doc. 17-3.) His appeal became final 90 days thereafter on November 11, 2008. Bowen v. Roe, 188 F.3d 1157 (9th Cir.1999). Thus, the one-year statute of limitations expired on November 12, 2009. Petitioner's claim is untimely by 16 years.

E.      Annual Evaluations

Petitioner next contends that the state has submitted annual evaluations including clinical notes, observations and conclusions that he has never seen or given a chance to challenge. He claims he has had no lawyer to question the evaluator's qualifications or the reliability of their findings. He asserts that without a lawyer, he is defenseless against the ever-growing record.

Respondent alleges that the claim is unexhausted. While Petitioner has included the argument within his claims before the state court, he has never raised a stand-alone due process claim before the state court, as he does here. Thus, Respondent is correct that the claim is unexhausted. In any event, this claim is without merit.

As previously discussed, the Supreme Court has not found a constitutional right to counsel in civil commitment proceedings. See Turner v. Rogers, 564 U.S. at 441. Moreover, Petitioner was given counsel but chose to dismiss his lawyer and proceed pro per. (Doc. 17-16; 17-35; 17-38; 24-2.) In addition, Petitioner attached his annual evaluation to his petition, disproving his claim of no access. As to his claim that he is unable to challenge the annual evaluation, this is not true. First, it appears Petitioner voluntarily refused to participate in the annual evaluation process by declining to be interviewed. (Doc. 9 at 73, 87.) Second, Petitioner may challenge the annual evaluations utilizing the procedures set forth in Cal. Welf. & Inst. Code §§ 6604.9, 6605, and 6608. (Doc. 17-5, 17-7.)

F.      Juvenile Conviction

Petitioner next contends his juvenile plea in 1981-82 was invalid because he was not advised that his plea could be used decades later to label him a sexually violent predator.

14

Petitioner's claim is barred from federal review by <u>Lackawanna County Dist. Attorney v. Coss</u>, 532 U.S. 394 (2001).  In <u>Lackawanna</u>, the Supreme Court considered whether a § 2254 habeas petitioner could collaterally attack an earlier state conviction used to enhance the sentence for a later state conviction.  The Court ruled that such a petitioner satisfies the "in custody" requirement if, although no longer serving the sentences imposed for the first state convictions, the petitioner was serving the sentences enhanced by the first convictions. <u>Id</u>. at 402-403.

The Court then turned to the central question of the appeal, and held that if a prior conviction is no longer open to federal review, the defendant cannot collaterally attack the prior conviction through a § 2254 petition:

> ...[W]e hold that once a state conviction is no longer open to direct or collateral attach in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. [Citation.] If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

<u>Id</u>. at 403-404.

The Supreme Court recognized two possible exceptions to the bar.  A petitioner in these circumstances may seek habeas relief if: 1) he challenges an enhanced sentence on the grounds that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, or 2) he obtains compelling evidence that he is actually innocent of the crime for which he was convicted, and could not have uncovered such evidence in a timely manner.  <u>Id</u>. at 405.

Petitioner does not allege any facts that would qualify him for an exception to the <u>Lackawanna</u> bar.  Petitioner does not assert that the basis for the unconstitutional conviction in 1981-82 was the court's failure to appoint counsel, nor does he demonstrate that he is actually innocent of the 1981-82 crime.  Accordingly, Petitioner does not meet an exception to the <u>Lackawanna</u> bar. <u>Id</u>. Thus, federal habeas review of the 1981-82 state court juvenile conviction is barred.

G.      Cumulative Error

Petitioner claims the combined impact of the individual errors alleged above violated his

15

due process rights. Under the cumulative error doctrine, the combined effect of multiple errors at trial can give rise to a due process violation, if the errors rendered the trial fundamentally unfair, even if each error considered individually would not warrant relief. See Parle v. Runnels, 505 F.3d 922, 928 (9th Cir. 2007). "[T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense far less persuasive" and thus "had a substantial and injurious effect or influence on the jury's verdict." Id. (internal citation and quotation marks omitted). The Ninth Circuit has "granted habeas relief under the cumulative effects doctrine when there is a 'unique symmetry' of otherwise harmless errors, such that they amplify each other in relation to a key contested issue in the case." Ybarra v. McDaniel, 656 F.3d 984, 1001 (9th Cir. 2011) (citing Parle, 505 F.3d at 927).

The Court has addressed each of the alleged errors Petitioner has raised in his petition for writ of habeas corpus and found no violation of the Constitution. Therefore, "[b]ecause we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible." Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011).  The claim should be denied.

## V.    RECOMMENDATION

For the foregoing reasons, the Court hereby RECOMMENDS the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when

reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **March 19, 2026**                    /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE

17